### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL ACTION** |
| v. | : | No. 25-0145 |
| | : | |
| **KENYON BONAPARTE** | : | |

**McHUGH, J.**                                                                                                    **December 29, 2025**

### MEMORANDUM

Defendant Kenyon Bonaparte stands charged with unlawful possession of a firearm by virtue of his status as a convicted felon and moves to suppress the physical evidence of his offense, arguing the weapon he was carrying was unlawfully seized. A hearing was held at which the prosecution presented testimony from the arresting officer of the City of Philadelphia Police Department, buttressed by body camera footage. I found the testimony of the officer, Brian Canela, to be credible, and on the record before me can discern no violation of Mr. Bonaparte's Fourth Amendment rights.

In January 2025, Officer Canela was assigned to the 16th police district in Philadelphia. He served in that district for many years, and was at the time a member of "5 squad," a tactical unit intended to engage in proactive policing. He was familiar with Mr. Bonaparte, having previously encountered him in various situations, and having previously participated in arrests of Mr. Bonaparte. The week before the arrest giving rise to the pending indictment, Officer Canela observed Mr. Bonaparte on the street, and based upon his prior experiences, thought it would be appropriate to engage him in a conversation. The officer executed a U-turn, but by the time he reoriented his vehicle, Mr. Bonaparte was no longer visible on the street. As Officer Canela described, Mr. Bonaparte had quickly "disappeared," leading the officer to ponder whether Mr.

Bonaparte had a particular reason to avoid contact with law enforcement. Upon returning to the station, Officer Canela ran Mr. Bonaparte's record and learned that he was under federal supervised release.

On the day of the arrest giving rise to this motion, Officer Canela was responding to a call from a convenience store at the corner of 37th Street and Fairmount Avenue in the Mantua neighborhood of Philadelphia. The location was known to the officer as the site of frequent disturbances, and the owner called police to complain that there was a patron with a gun who posed a safety risk. By the time the officer reached the store, the individual with the gun had left, but Officer Canela intended to harvest the security camera footage to help identify a suspect. As he went to enter the store, the owner opened the door ahead of him, and as that occurred, Mr. Bonaparte exited. In the officer's view, given Mr. Bonaparte's position, the most natural and logical movement would have been for him to hold the door open with his right arm. He did not do so, but rather reached across his body, and keeping the right side at an angle not visible to the officer. Officer Canela recognized this as a technique that police refer to as "blading," where a potential suspect with contraband or a weapon tries to avoid a direct view of the area of the body where it is has been placed. The video footage is consistent with the officer's description. There was a brief exchange between them, and the body camera footage clearly shows a flash of recognition on Mr. Bonaparte's face.

The officer watched Mr. Bonaparte proceed down the block, observing that his left arm was swinging naturally in cadence with his step, but his right arm was clutched closely to his body. The video footage confirms this account. In Officer Canela's experience, this was consistent with someone carrying a heavy object in a jacket or waistband and trying to support it while walking.

It was also Officer Canela's experience that the combination of Mr. Bonaparte's "blading" and unusual gait signified that he was carrying a firearm that he was trying to conceal.

The officer called out to him to ask what he had in his jacket. Simultaneously, he moved closer to Mr. Bonaparte, who turned around and spread the two sides of the jacket open wide. Officer Canela identified the outline of what appeared to be a handgun in the right pocket, and as he came closer to Mr. Bonaparte, he began to flee. But Officer Canela was close enough that he was quickly able to apprehend Mr. Bonaparte. On the video, the Court cannot perceive the outline of a gun as clearly as the officer testified he was able to at the time. But there is a shadowy protrusion apparent and given the relatively low resolution of body camera footage, I find no inconsistency with what the officer credibly testified he was able to see with the naked eye.

The defense first argues that Officer Canela made unwarranted assumptions about Mr. Bonaparte and was predetermined to stop and search him based upon his review of Mr. Bonaparte's record the week before. I disagree. The purpose of tactical squads such as the one to which Officer Canela was assigned is to promote public safety by deploying officers who are familiar with their assigned district, and such familiarity properly includes individuals who have previously committed offenses and remain under court supervision. The defense is correct that if Officer Canela approached Mr. Bonaparte on the street and demanded to search him, that would have been an unreasonable seizure. But the record here reflects that it was not simply the officer's knowledge about Mr. Bonaparte's record that led to his apprehension, but rather that knowledge accompanied by other contemporaneous observations reasonably suggesting to an experienced officer that Mr. Bonaparte might be carrying a weapon.

I am satisfied that Officer Canela had "[a] reasonable, articulable suspicion" supported by "specific and articulable facts which, taken together with rational inferences from those facts,

reasonably warrant[ed] [the] intrusion." *Johnson v. Campbell*, 332 F.3d 199, 204-05 (3d Cir. 2003) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). Officer Canela's long experience lends weight to this conclusion because trained law enforcement officers are presumed capable to "make inferences from and deductions about the cumulative information available to them." *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

I am also satisfied that the officer's interactions with Mr. Bonaparte did not go beyond a mere encounter. The brief exchange between them cannot support a conclusion that there was a submission to authority, considering that Officer Canela approached alone, did not display a weapon, and took no action to restrain Mr. Bonaparte until he began to flee. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991) (holding that a seizure does not occur where the subject does not yield to a show of authority); *e.g.*, *United States v. Smith*, 575 F.3d 308, 314 (3d Cir. 2009) (asking defendant several questions, including the same question multiple times, did not amount to a show of authority); *e.g.*, *United States v. Pigford*, 534 F. Supp. 3d 443, 451 (E.D. Pa. 2021) (finding no show of authority where officers purportedly said "hold up" or "come here, let me talk to you"); *e.g.*, *United States v. Bibbs*, 24-cr-375, 2025 WL 817593, at *2-3 (E.D. Pa. Mar. 12, 2025) (McHugh, J.) (finding no show of authority where officers did not exit their vehicle until confirming the presence of a weapon, did not engage the vehicle's lights or sirens, and asked for subject's permission to check for a weapon).

Moreover, Mr. Bonaparte's flight was instantaneous, so that even if the officer were deemed to have asserted his authority, Mr. Bonaparte was not seized until he was taken to the ground. *Smith*, 575 F.3d at 313. When a suspect flees, officers may use reasonable force to accomplish a valid stop. Tackling a suspect is permissible, and even when such force is used, a stop is not automatically transformed into an arrest. *United States v. Bonner*, 363 F.3d 213, 217

4

(3d Cir. 2004); *see, e.g.*, *United States v. Shambry*, 392 F.3d 631, 635-36 (3d Cir. 2004) (concluding the stop was justified given that the area had a reputation for criminal activity and the defendant fled when the officer sought to question him).  In stopping a suspect, officers can then conduct a pat-down for weapons if there is reason to take such a precaution, and as set forth above, Officer Canela can point to specific and articulable facts that Mr. Bonaparte was armed.  *United States v. Kithcart*, 218 F.3d 213, 219 (3d Cir. 2000).  The discovery of the gun, in turn, provided probable cause to arrest Mr. Bonaparte.  *United States v. Starkey*, 13-cr-654, 2014 WL 5810659, at *7-8 (E.D. Pa. Nov. 4, 2014).

    Defendant's Motion to Suppress will therefore be denied.  An appropriate order follows.

      /s/ Gerald Austin McHugh
    United States District Judge